K1O9TORC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              16 CR 809 (VM)

5    RANDY TORRES, ET AL.,

6                 Defendants.

7    ------------------------------x

8                                         New York, N.Y.
                                          January 24, 2020
9                                         9:27 a.m.

10
     Before:
11
                       HON. VICTOR MARRERO
12
                                          District Judge
13

14                          APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     JESSICA K. FENDER
17   ANDEN F. CHOW
     JACQUILINE KELLY
18        Assistant United States Attorneys

19   LAW OFFICE OF SAM A. SCHMIDT
          Attorneys for Defendant Randy Torres
20   SAM SCHMIDT
     ANDREW BERNSTEIN
21
     DONALDSON & CHILLIEST
22        Attorneys for Defendant Walston Owen
     XAVIER DONALDSON
23   ALAIN MASSENA

24   JOHN BURKE, ESQ.
          Attorneys for Defendant Charles Ventura
25   JOHN M. BURKE
     CHRISTOPHER WRIGHT

                   SOUTHERN DISTRICT REPORTERS, P.C.

                          (212) 805-0300

K1O9TORC

| | |
|---|---|
| 1 | THE COURT:  Good morning.  Thank you.  Be seated. |
| 2 | This is a proceeding in the matter of the United |
| 3 | States v. Torres and others.  It's docket no. 16 CR 0809. |
| 4 | Counsel please enter your appearances for the record. |
| 5 | MS. FENDER:  Good morning, your Honor.  Jessica |
| 6 | Fender, Anden Chow and Jacqueline Kelly on behalf of the |
| 7 | government and joined with us at counsel table is Victoria |
| 8 | Bosah who is our paralegal specialist. |
| 9 | MR. CHOW:  Good morning, your Honor. |
| 10 | THE COURT:  Good morning.  Welcome. |
| 11 | MR. SCHMIDT:  Good morning, your Honor.  Sam Schmidt |
| 12 | and Andrew Bernstein for Randy Torres who is sitting in the |
| 13 | first row. |
| 14 | MR. BERNSTEIN:  Good morning, your Honor. |
| 15 | THE COURT:  Good morning. |
| 16 | MR. DONALDSON:  Your Honor, Xavier Donaldson and |
| 17 | Mr. Alain Massena for Mr. Owen sitting in the first row, second |
| 18 | defendant. |
| 19 | MR. MASSENA:  Good morning, your Honor. |
| 20 | THE COURT:  Good morning. |
| 21 | MR. BURKE:  Good morning, Judge.  For Mr. Ventura, |
| 22 | John Burke.  And Judge, this is Christopher Wright.  He'll be |
| 23 | with me in this case. |
| 24 | MR. WRIGHT:  Good morning, your Honor. |
| 25 | THE COURT:  Good morning.  Welcome. |

K1O9TORC

1          The Court scheduled this proceeding as the final

2     pretrial conference in this matter which is scheduled for

3     commencement of trial on February 3.  And so we should go over

4     any questions that you may have concerning housekeeping or

5     procedural matters and rules, submissions.

6          I call to your attention that the Court entered a

7     decision and order in connection with the parties' various

8     motions in limine.  It was docketed yesterday.  So I assume

9     that you've had an opportunity to at least be aware that it is

10    now decided.

11         Questions that the parties may have that you may wish

12    to address?

13         Let me make a correction.  The trial is scheduled to

14    start on February 4.  You may remember that at the last

15    conference because of a conflict that Mr. Donaldson had on

16    February 3 we moved it to February 4.

17         Yes.  Government.  Ms. Fender.

18         MS. FENDER:  Your Honor, we do have a few matters to

19    address and I'm happy to start wherever you wish.

20         Certainly we would like the opportunity to address and

21    to bring to your attention an additional fact with respect to

22    defendant Randy Torres' flight and the arguments that we made

23    with respect to that motion.  But separately if you'd like to

24    wait to address that substantively.

25         On housekeeping matters we did want the opportunity to

K1O9TORC

1    alert your Honor to prior plea discussions that had happened

2    with the various parties.

3          Also my understanding, your Honor, is that when we

4    returned the S8 indictment that the defendants were not

5    formally arraigned on that indictment; that we all planned to

6    wait until the final pretrial conference.  So we would ask that

7    your Honor do that today.

8          THE COURT:  All right.

9          MR. SCHMIDT:  May I have a moment, your Honor?

10         THE COURT:  Yes, you may.

11         (Counsel and defendants confer)

12         THE COURT:  Let's proceed with the arraignment on the

13   superseding indictments.

14         Defendants please rise.

15         As the government has indicated, the government has

16   filed a superseding indictment in this matter on which the

17   defendants have not yet been arraigned so we'll proceed with

18   that at this point.

19         Mr. Schmidt, did you have something that you may wish?

20         MR. SCHMIDT:  Yes, your Honor.  That I've reviewed the

21   indictment with my client, Randy Torres.  He waives the public

22   reading of the indictment and wishes to enter a plea of not

23   guilty.

24         THE COURT:  Before you do that, let me ask each of the

25   defendants, let me first alert you that you have certain rights

K1O9TORC

| | |
|---|---|
| 1 | with respect to the superseding indictment.  You have a right |
| 2 | not to make any statement.  You may remain silent.  If you have |
| 3 | already made statements to the authorities, you need not make |
| 4 | any additional statements.  Any statements that you do make may |
| 5 | be used against you.  I see that you're represented by counsel |
| 6 | and you have the right to be represented by counsel at all |
| 7 | future proceedings in this matter. |
| 8 | Before you answer, let me ask the clerk to administer |
| 9 | the oath to the defendants. |
| 10 | (Defendants sworn) |
| 11 | THE COURT:  Let me ask the defendants either |
| 12 | individually or if counsel prefer through counsel whether you |
| 13 | have seen a copy of the indictment. |
| 14 | MR. MASSENA:  As to Mr. Owen, your Honor, Mr. Owen has |
| 15 | had an opportunity to review the indictment, your Honor, and he |
| 16 | enters a plea of not guilty, your Honor. |
| 17 | THE COURT:  Mr. Schmidt, you've already expressed. |
| 18 | MR. SCHMIDT:  Yes, your Honor. |
| 19 | MR. BURKE:  Judge, for Mr. Ventura we have the |
| 20 | indictment.  We reviewed it.  We waive the public reading. |
| 21 | Mr. Ventura will enter a plea of not guilty to all the counts |
| 22 | in the indictment, Judge. |
| 23 | THE COURT:  All right.  Thank you. |
| 24 | You may be seated. |
| 25 | Ms. Fender, next item. |

K1O9TORC

1          MS. FENDER:  Sure, your Honor.  So I think perhaps at

2     this point then it makes sense to go ahead and just state the

3     government's understanding of where things stood with respect

4     to plea discussions with the various parties.

5          THE COURT:  Government please indicate whether it made

6     any formal offers of plea agreements to the defendants and

7     whether those offers were rejected by the defendants.

8          MS. FENDER:  Yes.  Thank you, your Honor.

9          With respect to Mr. Torres, there has been no official

10    offer made.  There were discussions with counsel regarding a

11    theoretical plea with a cap of 300 months imprisonment, which

12    we were informed the defendant was not interested in pursuing.

13    That was on January 16, 2020.

14         With respect to Mr. Owens, we've had two rejected

15    offers.  There was a written offer on August 2019 that had a

16    potential 300 months imprisonment guideline calculation with a

17    mandatory minimum of 60 months.  And then there was a written

18    offer made in December of 2018 that was also rejected with a

19    guidelines of approximately 241 to 271 months.  Both of those,

20    again, were rejected.

21         With regard to Mr. Ventura, there was an offer that

22    was made that was rejected on February 4, 2019 the offer was

23    made.  It was a racketeering conspiracy potential plea with a

24    guideline range of 151 to 188 months imprisonment.  And that,

25    again, was rejected.

K1O9TORC

1           So at this point there are no outstanding plea offers

2     and we anticipate that we are proceeding to trial.

3           THE COURT:  Thank you.

4           MS. FENDER:  Your Honor, I spoke with your clerk

5     yesterday.

6           THE COURT:  Before you proceed, let's --

7           MS. FENDER:  Yes.  I'm sorry, your Honor.

8           THE COURT:  A little bit more housekeeping on that

9     issue.

10          The plea offers.  I will ask the defendants again

11    either individually or through counsel to confirm on the record

12    that what the government has represented to the Court

13    concerning these plea offers and their rejection is accurate.

14          Mr. Schmidt.

15          MR. SCHMIDT:  Your Honor, it is accurate.  As the

16    government indicates, that there was a plea offer made.  It was

17    not a final plea offer though it was -- the discussions went

18    beyond the discussion stage to an offer.  And otherwise the

19    government's statement is correct.

20          THE COURT:  Thank you.

21          MR. DONALDSON:  Your Honor, as for Mr. Owen, it is

22    correct that we were provided a written plea agreement back I

23    believe in August.  I discussed that with Mr. Owen.  That was

24    rejected.  We also provided a plea agreement, I believe, in

25    December 2018.  That was also rejected after discussions with

K1O9TORC

Mr. Owen.  And just to add to that, modify a little bit, we

entertained some conversations recently regarding plea

negotiations.  And I discussed that with Mr. Owen as well and

those were rejected.

          THE COURT:  Thank you.

          MR. BURKE:  Judge, on behave of Mr. Ventura we've had

numerous discussions regarding the government's offer early on

in the case and throughout the case.  He has rejected those

offers and we're here today.

          THE COURT:  All right.  Let me ask more specifically,

counsel, again, whether the discussions that you had with your

clients, including advising them of the range of punishment

under the guidelines that was entailed in the government

offers.

          MR. DONALDSON:  For Mr. Owen, I'd say that we

discussed rather thoroughly Mr. Owen's exposure related to the

plea agreements provided both in writing in August as well as

in December.  We discussed the exposure related to this case if

there is a loss at trial relating to the charges in this

indictment.  We discussed the guideline exposures, statutory

exposures, the maximum exposures, the minimum exposures and

every other exposure I can think of related to this indictment.

So we feel comfortable that Mr. Owen has been thoroughly

explained the contours, statutory remedies, guideline ranges of

the indictment as well as the plea agreements provided to us

K1O9TORC

1    both in written form and verbally.

2              THE COURT:  Thank you.

3              Mr. Burke.

4              MR. BURKE:  Judge, I've discussed with Mr. Ventura the

5    guidelines, statutory maximums, minimums.  There's a ten-year

6    mandatory minimum on a discharge in the indictment, I believe,

7    Judge, which runs consecutive to other things if it goes bad.

8    We have discussed it many times.  And that's where we are.

9              THE COURT:  As well as the exposure if he were to go

10   to trial.

11             MR. BURKE:  He does, your Honor.

12             THE COURT:  Thank you.

13             MR. SCHMIDT:  Your Honor, we have discussed the

14   guidelines and the maximum sentences regarding the charges,

15   depending on whatever the outcome of the trial is, with our

16   client and the guidelines in relation to the potential plea

17   offer that was made.

18             THE COURT:  Thank you.

19             Let's proceed then.  Let me, before we proceed,

20   indicate that the government has handed up a proposed 3500

21   protective order for the Court's endorsement.  I assume that --

22   well let me ask defendants whether they have all seen this

23   proposed order.

24             Mr. Schmidt.

25             MR. SCHMIDT:  Yes.  I have seen this order and there

K1O9TORC

1    are portions of this order that we object to and there are

2    portions of this order that we do not object to.

3         We do not object to what to do with ultimately the

4    3500 material at the end of the case.  We have no objection as

5    to that.  We have no objection as to the general group of

6    people who can view the 3500 material during the pendency of

7    the case or in the appeals.  We have no objection generally to

8    that.

9         We do have an objection to the government's eyes only

10   request.  We are now dealing with the tremendous amount of

11   material that as of today we can just now start discussing with

12   our clients, the discovery material that we have.  The

13   government -- we don't know which material the government seeks

14   to extend the eyes only to February 4 because we don't have

15   that information with us but it seems to me that it is

16   inappropriate in the last, approximately last week of trial,

17   not to be able to discuss with our client 3500 material of

18   witnesses so we can adequately prepare for trial.  Without

19   being able to discuss this material with our client prior to

20   trial, then I think that we're likely going to have a request

21   for an adjournment as soon as we have an ability to talk to our

22   client about it, whether it's a day or two days or three days,

23   I don't know, but not being able to discuss with our client

24   some of the material that we receive today I think is wrong and

25   improper.

K1O9TORC

1          THE COURT:  Thank you.

2          MS. FENDER:  Your Honor, may I speak briefly?  Because

3    I think this is a misunderstanding.  And I will say with

4    respect to Mr. Schmidt that he just got this 3500 protective

5    order right before the court conference so maybe he's not had a

6    chance to read it thoroughly.

7          But the attorneys' eyes only provision actually says

8    that as of today, which is the day that we had agreed to

9    produce 3500 materials, that's the attorneys' eyes only

10   deadline.  So effectively we will produce 3500 and they will be

11   in a position to share it with their client even if it's been

12   designated as attorneys' eyes only.  That's on the bottom of

13   page two.

14         THE COURT:  Mr. Schmidt, does that clarify at least

15   the grounds for your objection?

16         MR. SCHMIDT:  Yes, it does.

17         THE COURT:  Thank you.

18         Mr. Donaldson.

19         MR. DONALDSON:  Judge, I understood Mr. Schmidt's

20   point but I just think -- I agree with the 3500 material

21   protective order language.  Just I think the second paragraph

22   on page two, because we got it today, that was the confusing

23   part.  It says until January 24.  So I guess beginning today

24   and until -- well until February 4, 2020.

25         MR. SCHMIDT:  That's just disseminating I guess

K1O9TORC

1    identity.

2              MR. DONALDSON:  No problem.

3              MR. SCHMIDT:  Beyond the defendant.

4              THE COURT:  Mr. Burke.

5              MR. BURKE:  Most respectfully, Judge, I understand the

6    order.  I understand orders of a similar nature given out in

7    most cases.  However, I respectfully object to the fact that if

8    Mr. Ventura is to see the statements of the witnesses who are

9    going to testify at trial, someone is going to be sitting there

10   with him and he can't have that material to look at.  I know --

11   I know about the safety issues.  I know about everything.  I

12   just think all these orders really are a Sixth Amendment

13   violation.  We're going to get this material today, I believe,

14   or sometime today, given the 3500 material.  We have ten days

15   before the trial.  So the fact that someone has got to babysit

16   with Mr. Ventura or something while he looks at this material,

17   while we're trying to look at this material, there's 50

18   witnesses on this piece of paper here.  I don't expect to see

19   50 witnesses at trial.  And I know this is how things go here,

20   right.  I am just registering my objection to the fact that

21   we're put in this position, right.  He's got the right to be

22   ready for trial.  We have the right to talk to him.  He's got

23   the right to look at the stuff.  So it just makes it very

24   difficult and cumbersome.  I think it's unfair.  I'll say no

25   more.

K1O9TORC

                    THE COURT:  All right.  I think --

                    MR. DONALDSON:  Judge, I'm sorry to interrupt.  Just
so I'm clear.  I may be reading it wrong.  But I think that as
of today we can give it to the defendants and then they can
review it -- that's not correct?  That's not correct?  So they
cannot review it by themselves?

                    THE COURT:  Ms. Fender, clarify the question.

                    MS. FENDER:  Yes, your Honor.  Just to put on the
record, that's correct, that the defendants would not be
allowed to keep the 3500 materials in the jail which, as
Mr. Burke has represented, is a quite common practice in many
cases but certainly we think is particularly appropriate here
with respect to all of the safety concerns that we've expressed
throughout the pendency of this case.

                    THE COURT:  Thank you.

                    MR. SCHMIDT:  Your Honor, if I may respond?

                    Last week I put in a request for an additional
paralegal for exactly this purpose so that she is able to visit
the facilities, so that she can go with the material to review
it with our client so we don't have to spend the initial time
reviewing all the material and then we can go back and review
the material that's the most important and the most useful to
discuss with him.  We have not yet heard back from your Honor's
chambers as to whether that paralegal was approved.  We sent it
through eVoucher, as we have to, which takes longer.

K1O9TORC

1          THE COURT:  Mr. Schmidt, let me cut you off.  That

2    request was approved just a couple of days ago.  So just look

3    at the docket sheet.

4          MR. SCHMIDT:  Thank you very much, your Honor.

5          THE COURT:  Coming back to Mr. Burke's concern,

6    Mr. Burke what you've raised is not a new matter in this

7    proceeding, nor indeed in any other case that goes to trial,

8    criminal case that goes to trial in this district.  As seasoned

9    as you are, you're not only aware that the practice in most

10   criminal cases that go to trial is for the government to

11   produce the 3500 material on the Friday before the commencement

12   of trial on the Monday.  So from that respect you can count

13   your blessings that you have at least ten days, more than most

14   counsel have in criminal cases, and in part that was a result

15   that came about because of your prior pleas for that

16   accommodation.  And so I don't know that there is much more

17   that needs to be said on this matter.  Some of the cases that I

18   have seen go to trial where the government has produced the

19   3500 material on the Friday before the Monday are every bit as

20   complicated as this one.  So count your blessings.

21         MR. BURKE:  I understand the Court's ruling and I know

22   you understand my objection, Judge.

23         THE COURT:  I do.

24         MR. BURKE:  It's all a question of context.  If we

25   were across the street now in the state court, you know,

K1O9TORC

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | fifteen days after arraignment.  So I know that's not the rules          |
| 2  | here.  I understand that.  And I'll stop objecting and I                  |
| 3  | understand the Court's ruling.                                           |
| 4  |              THE COURT:  Thank you.                                       |
| 5  |              MR. DONALDSON:  After I've read it again and reviewed       |
| 6  | it again.  I think I'm going to have to join Mr. Burke and note          |
| 7  | my objection because as it's drafted -- and I think I                    |
| 8  | understand their intent but as it's drafted in the protective           |
| 9  | order it says that we can do it after today but if they're              |
| 10 | saying you cannot give it to the defendants after today then            |
| 11 | I'm going to have to object to that as well.                             |
| 12 |              THE COURT:  Thank you.                                       |
| 13 |              If there's nothing else on this matter let's move on.      |
| 14 | I've heard the arguments and the objections.                            |
| 15 |              MR. SCHMIDT:  Briefly, your Honor.                          |
| 16 |              We have no problem, because we have extra staff, just      |
| 17 | to go over it with our client.                                          |
| 18 |              One question I have is after the government opens and      |
| 19 | they announce publicly who the witness is going to be and what          |
| 20 | they're going to testify to, I would think then the limitation         |
| 21 | for our client having the material to review it because this           |
| 22 | trial is going to take a few weeks, is unnecessary at that             |
| 23 | point.  There might be some things, for example, obviously             |
| 24 | addresses perhaps and some personal information that we can            |
| 25 | redact for the government but for them to be able to review           |

K1O9TORC

1   this material on their own at their leisure after the

2   announcement of who these witnesses are seemed to me to be

3   overkill and unnecessary.

4         THE COURT:  Thank you.

5         Ms. Fender.

6         MS. FENDER:  Your Honor, I would vehemently disagree

7   with that.  I think we have seen, again, in this very case the

8   importance of people trying to smuggle in information and often

9   taking screenshots and pictures of discovery and things that

10  should not have been disclosed, getting that to the outside

11  world and an attempt to interfere with and intimidate witnesses

12  and/or their families.  So we absolutely think that the order

13  as drafted is appropriate and we would urge your Honor to enter

14  it.

15        THE COURT:  Thank you.

16        Having heard the parties' comments, objections and

17  concerns about the prohibitive order, I am satisfied that it is

18  appropriate for the order to proceed as is and I will so

19  endorse it.

20        Next, Ms. Fender.

21        MS. FENDER:  Your Honor, as has already been

22  referenced a few times throughout this morning's proceedings we

23  spoke with your clerk yesterday and realized, and we apologize

24  that we had neglected to provide in advance of today's date, a

25  people and places list for your Honor's consideration.  From

K1O9TORC

1  reading your Honor's standing order we understood that to be a

2  list of all of the potential names, places, things that might

3  be important and discussed during the course of the trial.

4  This includes the government's witnesses but is not limited to

5  that.

6          We provided that list to your Honor.  I will say that

7  right now it reflects only the government's names.  We did

8  reach out last night, upon hearing from your Honor's clerk, to

9  request any input from the defense.  But we're advised by

10 Mr. Torres' team that there were no names to be added and

11 otherwise did not hear from anyone.

12         We spoke with Mr. Donaldson this morning.  We

13 understand that there's least one amendment which we are happy

14 to make and to recirculate to your Honor.  I believe Detective

15 Jalin Bulding J-A-L-I-N B-U-L-D-I-N-G.

16         MR. DONALDSON:  Detective Bulding.

17         MS. FENDER:  And I've heard nothing from Mr. Burke.

18 So I don't believe there are any amendments.

19         MR. BURKE:  I'll just chirp in now, Judge.  I don't

20 really have a witness at this time, and I'm really kind of

21 reserving until I see what's happening with the case and I see

22 the 3500 the material.  Look, I don't have five people flying

23 in from Hawaii or something.  We my have some rebuttal or

24 police officers or something of that nature.  I need to see an

25 outline of what their witnesses are going to say before I say I

K1O9TORC

 1    don't want to call anybody.  So right now, Judge, I don't have

 2    any names.

 3              MS. FENDER:  Fair enough, your Honor.

 4              The only thing the government would point out is that

 5    we understood that this list was to be used in part for

 6    conducting an appropriate voir dire of the potential jury

 7    members so that we could understand if there were any conflicts

 8    or issues that needed to be vetted and so for that reason we

 9    would ask that, even if it's overly broad, if the defense has

10    names that they think are going to come up that are not on this

11    list that they would add that.

12              THE COURT:  That is critical.  We cannot wait until

13    after the voir dire for any party to identify names of

14    individuals who may be referred to in the course of the voir

15    dire -- during the course of the trial.  That has to be upfront

16    at the voir dire.

17              Mr. Schmidt, anything else?

18              MR. SCHMIDT:  Yes, your Honor.  There are actually I

19    think the government left out a few names in their list, even

20    the name of somebody on the indictment, in their papers, for

21    example, Caliber.  We will see, going through our records, if

22    there are other names that are likely going to be raised on

23    cross-examination or direct examination and we will forward

24    the -- those additional names to your Honor prior to trial.

25              THE COURT:  Thank you.

K1O9TORC

1          The government will collect any such additional names

2     and references and issue a revised list not later than Friday

3     before the Monday of the trial or Monday before the Tuesday of

4     the trial.

5          MS. FENDER:  By Monday, your Honor?

6          THE COURT:  Thank you.

7          Ms. Fender, anything else from the government?

8          MS. FENDER:  I hate to say it but yes, your Honor.

9          I wanted to address with your Honor briefly two

10    things.  One, just to put your Honor on notice that because

11    we're just producing 3500 today, one of the issues we've not

12    had a chance to discuss with the defense yet is certain areas

13    or topics of cross-examination for certain of our witnesses

14    that we think will be inappropriate.  We're going to be working

15    with the defense to see if the parties can reach an agreement

16    but I anticipate that they would have wanted to see the 3500

17    material before they agree or don't; and so if there are any

18    issues that we can't resolve, we will certainly bring those to

19    your Honor's attention as soon as possible.

20         Separately, I just wanted to, I guess, put on your

21    Honor's radar an issue with respect to the Facebook and social

22    media exhibits.  So, as your Honor is aware, especially

23    Mr. Schmidt and the Torres counsel have pushed very hard for

24    early disclosure of the government's exhibits and particularly

25    social media.  We represented in our papers that we were

K1O9TORC

1    seeking to do that far enough in advance of trial that if there

2    were specific objections your Honor would have a chance to

3    address those.

4           We are doing everything that we can and indeed have

5    been working very diligently over the last week or two to try

6    to front load those exhibits.  We're hopeful that we'll be able

7    to produce them to the defense by Monday so that they will be

8    in a position to raise any issues that they see fit with your

9    Honor.  So we are doing what we can there.

10          Just another issue to sort of highlight for your Honor

11   that I don't think we're in a position to resolve it yet.  We,

12   as your Honor knows, have been all working, including the

13   defense, very hard to resolve a number of issues and to reach

14   stipulations to try to streamline the trial.  We have been

15   advised that at this point we're not going to be able to do

16   that, we don't think, with respect to the Facebook exhibits and

17   so we are planning to call a Facebook witness at this time.

18          Having spoken with defense counsel, it's not entirely

19   clear what their proposed exhibits would look like.  We've

20   expressed some concerns as to whether or not the Facebook

21   witness will be in a position to authenticate those exhibits.

22   And so we'll have to see a little bit how this plays out but we

23   are continuing to dialogue about that but we anticipate that

24   that may be an issue that lands on your Honor's lap during the

25   trial because there are -- since there is a Facebook witness

K1O9TORC

```
1    who can only authenticate certain types of Facebook evidence,

2    it may be that that puts the defense in a somewhat difficult

3    position, depending on how they create their exhibits.  So

4    we've let them know that.  We're trying to avoid the issue.

5            And then I think with respect to proceeding with the

6    trial, we wanted to let your Honor know we have a few witnesses

7    that we think will require interpreters.  We're working to make

8    appropriate arrangements for those individuals.

9            MR. SCHMIDT:  Your Honor, we greatly appreciate the

10   government trying to get their social media exhibits to us as

11   early as possible.  I know, having done so much work in it,

12   it's sort of a monster, it's not easy to deal with.

13           She did raise one of the issues that we're trying to

14   resolve as well with the government is basically the

15   authentication of the material.

16           We have received from the government two types of

17   material from Facebook.  One is a PDF printout of all of their

18   HTML files.  And we have also then received from the

19   government -- from Facebook through the government the files in

20   HTML.  So it's digital.  And so you're capable of doing a lot

21   more things with it on the computer.

22           That material came from the government and we are more

23   likely to use that as the authentication of the material.  The

24   government, my understanding is it plans to use the PDF as

25   authentication.  We are going to try to work out something with
```

K1O9TORC

1    the government so that both sides have the ability to present

2    their case in the manner that they wish to and that it will

3    accurately reflect the material received from Facebook.

4            The world is changing in court with all the digital

5    material and we're trying to make it both possible for the

6    parties to present it and for the jury to review it.  And we're

7    working on that.  And if we do reach an impasse, we'll let your

8    Honor know.

9            THE COURT:  Let me comment on this question.  I would

10   suggest that if the defense has some legitimate, good faith

11   basis for challenging the authenticity of a document that is

12   produced by the government from a third party, especially one

13   as well known as Facebook or any of the other major

14   telecommunications entities, telephone company, etc., by all

15   means raise your issue and attempt as vigorously as you can to

16   raise objections.  If there isn't a good faith reason to

17   challenge the document, if there is no good faith basis for a

18   suggestion that somehow the government is attempting to

19   introduce inauthentic documents and therefore essentially

20   engaging in unlawful conduct, that's entirely a different

21   story.  But often we get into trials where witnesses are

22   brought in from telephone companies, for example, or some other

23   entities to authenticate documents and it is a pure waste of

24   time, those individuals' time, to come to trial only to say:

25   Yes, this is an authentic document and then be subjected to

K1O9TORC

1    lengthy cross-examination as to why maybe it's not authentic.

2    It becomes a fishing expedition and wastes time of the court,

3    the jury, and the parties.

4            So bear those observations in mind as you engage in

5    this discussion with the government and make every effort to

6    avoid unnecessary controversy if, in fact, again, there is no

7    legitimate good faith basis for challenging the authenticity of

8    a particular document or if you have an alternative document

9    that suggests that somehow the one the government has produced

10   is not the real one.

11           Mr. Schmidt.

12           MR. SCHMIDT:  Your Honor, that's actually the reverse.

13   I don't think we're going to have a problem with authentication

14   with the material that the government provided to us.  It's the

15   issue of whether they're going to have a problem with us

16   offering evidence in the form that we received from them.  So

17   it's not that we view there is going to be any difficulty in

18   the authentication.  It's more the government may -- hesitating

19   as to the authentication of the material that we received from

20   them in the digital format.  So that's what we're trying to

21   work out.  So it's not new.

22           THE COURT:  I presume what I said just now applies not

23   only to defendants; it applies to the government as well.  If

24   the documents are authentic because they are brought in from

25   one source the government says produced them and introduced

K1O9TORC

1   against the defendants, well if the government produced those

2   documents because they were made available to it by Facebook,

3   the documents should not become inauthentic when offered by the

4   defendants.

5         MS. FENDER:  Your Honor, we certainly appreciate all

6   of that and I think the issue that we're having is that it's

7   not that it's just the original materials coming back to us

8   that, for instance, they want to use different pages than we

9   want to use.  Of course we would have no problem with that.

10         The issue is that we understand that they've been

11   working with their specialist, whose name escapes me at this

12   moment, but the person that was appointed by the court to help

13   them with social media exhibits, that that person is taking the

14   original evidence and is manipulating it, and I don't mean to

15   suggest in bad faith in any way, but manipulating it to make it

16   what they see -- view as more readable or more compact or what

17   have you.

18         So we have expressed our concern that unless we

19   understand exactly where the source material is for that and

20   can quickly authenticate those exhibits in real time, we're

21   going to have to object because we don't know how these were

22   prepared or where the underlying evidence comes from.

23         So what we've represented to the defense is, just like

24   us, if they want to go back to the original documents then, of

25   course, we will authenticate them.  But it's these manipulated

K1O9TORC

1   defense exhibits that we are expressing potential concern

2   about.  We are continuing to try to discuss it.  I'm sure that

3   we will continue to have discussions over the next week.  I

4   just wanted to let your Honor know.

5           THE COURT:  Thank you.  That's fair enough.

6           Anything else?

7           Mr. Burke.

8           MR. BURKE:  Switching topics for a moment, Judge.

9   Going to jury selection.  I think it's Rule 24 of the Federal

10   Rules of Criminal Procedure.  They get six peremps, we get ten.

11   But since there are multiple defendants, we can ask the Court

12   for more challenges.  And there's three of us.  It's one trial

13   that's going to be three separate trials.

14           So on behalf of Mr. Ventura and I believe the other

15   defendants also we're asking the Court to consider giving us

16   extra challenges.  Although we've been working together -- at

17   least everyone else has been working, Judge -- to get ready for

18   the case and we'll be joining in things, we have separate

19   defenses.  They may not be overlapping.  I think this is a case

20   where the defendants should be given extra challenges, Judge.

21           As to the exact amount, I'll leave it to the Court or

22   I'll leave everything to the Court.  It's up to you.  But

23   fifteen would be good.  There's three of us here.  That's my

24   application, Judge.

25           THE COURT:  All right.  Anything else?

K1O9TORC

1          MS. FENDER:  Your Honor, we understand that Your Honor

2     has the authority to do that.  We think that under the

3     circumstances and given what we anticipate the defenses will be

4     that ten is actually sufficient but if your Honor is inclined

5     to increase the number we would just ask that the government's

6     number also increase at a proportionate amount.

7          THE COURT:  Thank you.

8          MR. BURKE:  Judge, most explicitly, Rule 24 says the

9     defense gets more challenges.  However, it's up to the Court.

10         THE COURT:  Thank you.

11         Mr. Donaldson, you seem to be at the cusp of a

12     thought.

13         MR. DONALDSON:  Just a little antsy, Judge.  I'm ready

14     to start this trial.

15         We agree with Mr. Burke.  We spoke about that I think

16     last week.  We agree with that.  I've never seen a situation

17     where the government gets more challenges as well but if they

18     want more -- if they want more, they can have -- it's up to

19     you.  I've never seen that but we'll take the fifteen.

20         I was going to discuss a different topic if we're

21     finished with that one.

22         MS. FENDER:  Just as a data point, your Honor, there

23     are members of the U.S. Attorney's Office here at this table

24     that have had trials in which the government has had increased

25     numbers of challenges granted, so for whatever that's worth.

K1O9TORC

1          THE COURT:  OK.  Mr. Donaldson.

2          MR. DONALDSON:  No.  I'm finished with that one.

3    Should I move on to the next point?

4          THE COURT:  Yes.  If you have a new topic.

5          MR. DONALDSON:  Yes, I do.  Just briefly regarding

6    housekeeping.  So we did enter into a lot of stips.  I don't

7    know exactly how many.  Maybe eleven, twelve -- a lot of stips

8    with the goal, we think, of trying to move this efficiently and

9    not arguing about what I think are not material points to argue

10   about.  But that being said, we also did talk about -- the

11   language of the stips were rather inclusive regarding the

12   documents will come in or the evidence will come in.  What we

13   don't have exactly in the stips is the language that they are

14   coming in subject to some objections regarding relevance before

15   they actually get into evidence.  So I just want to make sure

16   we're still clear on that.

17          Specifically I'm talking about the medical records and

18   the ballistics and things like that.  I'm not talking about the

19   authenticity of it.  We're not talking about the weight of

20   them, but we are talking about whether or not they are still

21   going to be relevant and the background is going to allow them

22   to come in.  So I just want to make sure we are still in

23   agreement with that with the government that we are maintaining

24   that objection but we're just stipulating to what the language

25   of the actual stipulation is without it coming in without the

K1O9TORC

proper background relevancy.  So we're maintaining those

relevancy objections.

           As far as the medical records are concerned, they gave

us about nine, I believe, medical records and these medical

records are anywhere between a thousand and thousands of pages

in length.  I informed the government that we would be

stipulating to the fact that these people were injured.  That's

not -- but what we are going to maintain is our objections to

any contest in the medical records that do not go directly to

medical care and treatment.  I think they agree with that as

well.  So we will be able to redact that information before it

goes to the jury.  I think that's pretty standard but I think

they've agreed to that as well.  So just so those -- that's out

there.  I think we all agree on that.  Right.

           THE COURT:  OK.

           MS. FENDER:  I will represent on the record, yes,

we've had those conversations with Mr. Donaldson.  Of course

the government is not planning to offer any evidence that is

not relevant.

           And specifically with respect to the medical records,

Mr. Donaldson is quite correct.  They are voluminous.  We will

be seeking, if they are admitted because they are otherwise

relevant, to redact out anything that would not be relevant

that does not go to medical treatment.

           MR. BURKE:  And your Honor, forgive me.  It's a very

K1O9TORC

1    rudimentary housekeeping matter but I would just ask that any

2    objection made by a defendant will be deemed an objection made

3    by all unless people opt out.  It might save a lot of time,

4    especially during the trial, if we make an objection we don't

5    all have to say we join, we join, we join.  That's one thing.

6           The second thing is, Judge, I haven't had the

7    privilege of picking a jury in front of the Court.  So I don't

8    know exactly what mechanics you use when you pick the jury.  I

9    don't know if you bring them all in at once or you do it, put

10   them in the box.  I'm sure you're going to explain it, but I

11   just wanted to get it in my mind before I leave.

12          THE COURT:  Mr. Donaldson.

13          MR. DONALDSON:  I love John.  We've had some trials

14   together.  But before we get to that, we do want to talk about

15   the layout of the court as well.  But I did tell the government

16   that I was going to, with the Court's permission, supplement

17   the -- our requests to charge and our voir dire.  I'll just say

18   it.  I am a huge proponent of the implicit bias instructions

19   and language that I'm helping to draft for this district and

20   they're using in the Ninth Circuit already.  I think that it is

21   necessary nowadays.  I think the Supreme Court has had recent

22   decisions directly addressing the fact that implicit bias plays

23   significant roles in jury decisions.

24          In this case, particularly because of the nature of

25   the -- let's just call it race-based language, the derogatory

K1O9TORC

1    language in a lot of the conversations, phonecalls, e-mails,

2    etc.  I can think of no other case where this is more --

3    probably more appropriate.

4         So I told the government I was going to provide some

5    language to them related to implicit bias.  I would hope the

6    Court would strongly consider it.  I think it should go into

7    the initial questions when we talk about jury selection as well

8    as into the jury instructions.

9         With the Court's permission, I'm going to submit that

10   to the Court, to the government first for their review, and

11   then I'll send it to the Court by Sunday, if the Court will

12   allow me to do that.

13        THE COURT:  Thank you.

14        Whatever you have share with the government and if

15   there is no objection we'll consider it.

16        Anything else?

17        Ms. Fender.

18        MS. FENDER:  I just want to make sure I'm clear with

19   respect to Mr. Burke's point.  Is everyone joining in the

20   request that any objection by one defendant is an objection for

21   all, and is your Honor going to proceed in that manner, just

22   for clarity of the record.

23        THE COURT:  That could be very unwieldy.  It may apply

24   in some circumstances but it may not necessarily apply in all.

25   So we'll have to deal with that as the occasion arises.

K1O9TORC

1          MS. FENDER:  Very good, your Honor.

2          It sounds like there are some questions about jury

3    selection that are still pending.

4          MR. BURKE:  I'm just wondering how the Court selects a

5    jury.

6          THE COURT:  I was going to deal with that at the very

7    end when I deal with whatever else is on the table.

8          MS. FENDER:  If it's my turn again, your Honor, then

9    the last thing I wanted to raise was the specifics with respect

10   to the -- Mr. Torres' flight and the open questions about what

11   additional evidence, if any, the government could bring to

12   bear, if this is a good time to address that.

13         THE COURT:  Is this additional material that you've

14   made available to the defense --

15         MS. FENDER:  I've made it available to Mr. Torres --

16         THE COURT:  -- or is this an issue that you wish to

17   address in a letter?

18         MS. FENDER:  Certainly, your Honor, it's pretty

19   straightforward.  I have given the text messages that we would

20   rely on to Mr. Torres' counsel a few days ago.  I have not

21   disseminated it to the other two cocounsel because I don't

22   think the issue related to them but I have copies today.

23         Just very briefly, and we're happy to address this by

24   letter if your Honor would prefer.  We were able to obtain

25   photographs of text messages that Mr. Torres sent to certain

K1O9TORC

1    individuals on the morning of his arrest.  The text messages

2    were personally observed by an officer detective that we would

3    call to reflect that he took those pictures.  And the text

4    messages were sent on the very day that the other codefendants

5    of Mr. Torres were being arrested.  They are timed from about

6    5:40 in the morning and they reflect that indeed cops are at

7    the door and that he's leaving.

8              So I have copies for your Honor and for counsel today,

9    be happy to hand those up if your Honor would like to see them.

10             THE COURT:  You may.

11             MS. FENDER:  But we think this addresses the point

12   that your Honor made in your ruling that there was not specific

13   information to show that Mr. Torres was aware of the fact that

14   he was actually going to be subject to arrest on that day.

15             MR. SCHMIDT:  Your Honor, I think it may be more

16   appropriate for the government to address this in writing

17   because we'd like to address this in writing.  The fact that

18   police were at the door doesn't mean that he is aware that he's

19   going to be arrested for the specific charges that he was

20   arrested for.  So I'm not clear how this really changes it.

21   And I think the government should address that in a letter and

22   then we will respond.

23             THE COURT:  Ms. Fender.

24             MS. FENDER:  We're happy to do that, your Honor.  We

25   think that your Honor's ruling was pretty clear and we think

K1O9TORC

1    these text messages are pretty clear so we think they do go to

2    the precise point that was made but if your Honor would like to

3    see additional briefing we're happy to do that in a brief

4    letter.

5            THE COURT:  Why don't you just submit a very brief

6    letter.

7            MS. FENDER:  Very good.  Thank you.

8            THE COURT:  Mr. Bernstein, did you have something?

9            MR. BERNSTEIN:  Yes, your Honor.  Just another

10   housekeeping matter as to the layout of the defense table.  I

11   believe the Torres team will be three, Owen team will be three,

12   and the defendants obviously, and Mr. Ventura, two.  And so we

13   just want to figure out what is the normal layout.  We are all

14   having computers as well.

15           THE COURT:  There is no normal layout in this kind of

16   situation.  It is not that often that you have a combination of

17   three defendants and twelve different attorneys however I think

18   the only way to deal with it is for the parties to see what

19   arrangements you can make among yourselves insofar as

20   accommodating yourselves at the table and I believe some of the

21   chairs or benches behind the table.  There are times in which

22   counsel also line up chairs along the wall to my left.  I leave

23   it up to you to see how you can allocate your space

24   accordingly.

25           Coming back to Mr. Burke's questions insofar as the

K1O9TORC

1    mechanics of the jury selection.  Some of that is set forth in

2    the Court's individual practices.  My general practice is to

3    when we have a jury of 14, 12 regular and 2 alternates, as we

4    will probably have in this case, we will put 34 jurors selected

5    at random from the wheel into the box and then we proceed to

6    allocution as to those 34.  And as any of them are excused for

7    good reason, then we call another one from the wheel,

8    substitute for the one who has been excused.  And at the end of

9    that process through the entire voir dire when we have the 34

10   remaining, I ask the parties whether there are any additional

11   challenges for cause.  In there are none, then we proceed to

12   the selection of the twelve regular and two alternate jurors in

13   the robing room with each side having the number of peremptory

14   objections that have been specified by the Court.  And that

15   selection, again, that is in the individual practices,

16   generally allow for challenges to any name on the board without

17   any restrictions on particular order.  So meaning if let's say

18   jurors number one and two and three have been not challenged in

19   the first round, their names still remain for challenges in

20   subsequent rounds.  That, in general, is the simplified version

21   of the process.  It will become more concrete as we go along.

22          Is there anything else?

23          MS. FENDER:  Your Honor, just for the Court's

24   consideration, given the anticipated length of the trial which

25   might be three weeks, we would ask your Honor to at least

K1O9TORC

1    consider at one additional alternate.

2             MR. SCHMIDT:  I'm sorry.  I didn't hear the end of

3    that.

4             THE COURT:  The government has asked the Court to

5    consider an additional alternate in view of the anticipated

6    length of the trial.

7             MR. DONALDSON:  No objection.

8             MR. SCHMIDT:  No objection, your Honor.

9             THE COURT:  Anything else?

10            MS. FENDER:  Not from the government, your Honor.

11            THE COURT:  Hearing nothing else.  Thank you.  Have a

12   good day.  Have a good weekend.

13            (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25